

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JJD:RAT
F. #2010R00014

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

October 7, 2013

The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
920 Federal Plaza
Central Islip, New York 11722

    Re:  United States v. Louis Ruiz
         Criminal Docket No. 10-074 (S-4)(JFB)

Dear Judge Bianco:

      On March 22, 2013, the defendant Louis Ruiz, also known as "Chucky," pled guilty to Racketeering, in violation of 18 U.S.C. § 1962(c) in connection with the January 18, 2009 robbery of Miguel Alguera, John Doe #1 and John Doe #2, which resulted in the murder of Mr. Alguera and the May 2009 conspiracy to murder rival SWP gang members, which resulted in the murder of Ruben Madrid on May 17, 2009. The defendant also pled guilty to an additional count of conspiracy to commit assaults with dangerous weapons, in violation of 18 U.S.C. § 1959(a)(6), which arose from a series of assaults committed by MS-13 members at the Antojitos Salvadoranos Bar in Hempstead, New York, one of which ended in the murder of Iber Marin. According to the Probation Department, the defendant's total offense level is 42 and he should be sentenced within Criminal History Category IV, which together yield an advisory Guidelines range of 276 months, given the fact that the statutorily authorized sentenced for each count combined is 23 years. Pre-Sentence Investigation Report ("PSR") at ¶ 128.

The government concurs with this calculation of the defendant's offense level with the following caveat. In the plea agreement, the government estimated the defendant's total offense level to be 39. See Plea Agreement at ¶¶ 4-5. In reaching that calculation, the government did not include the acts committed by the defendant, which he did not plead guilty to that are contained in count 1, RICO act 1B (Murder of Miguel Alguera), count 1, Rico act 8B (Murder of Ruben Madrid), count 1, RICO act 11 (Conspiracy to Murder Rival Gang members and murder of Jairo Vasquez), and count 1, RICO act 18 as well as count 57 (Assault of NCCC Inmates). Additionally, pursuant to an agreement between the parties, the government agreed to recommend that the defendant receive an additional one-level reduction for a global plea disposition, which would result in an adjusted offense level of 39. Id. at ¶¶ 4 and 7. The defendant stipulated to the Guidelines calculation contained in the Plea Agreement. Id. Insofar as the conditions of the global disposition have been met, the government recommends that the defendant's total adjusted offense level is 39 and he should be sentenced within Criminal History Category IV, which together yield an advisory Guidelines range of 276 months, given the fact that the combined statutorily authorized sentenced is 23 years. The government disagrees with the defense argument in their sentencing memorandum ("Def. Mem.") that including these incidents as relevant conduct in defendant's Guidelines calculations somehow "contradicts the terms. . . and underlying spirit" of the plea agreement. Def. Mem. at 2. Furthermore, as stated in the PSR, the government would be able to prove that the defendant committed the criminal acts alleged in the indictment that the defendant did not plead guilty to by a preponderance of the evidence. PSR at ¶ 5. However, regardless of whether such acts are included in the defendant's advisory Guidelines calculation or not, his advisory Guidelines range is still 360 months to life. Def. Mem. at 4. Accordingly, insofar as the disputed conduct would not affect the defendant's advisory Guidelines range, proving this conduct at a hearing would serve no purpose.

On August 26, 2013, the government received defendant's sentencing memorandum wherein he requested a sentence of 180 months, which is below the applicable Guidelines range of 276 months, primarily because of his personal history, medical history and alleged cognitive impairments. Def. Mem. at 1-17. For the reasons set forth more fully below, the government respectfully submits that, after considering the defendant's advisory Guidelines range and the factors set forth in 18 U.S.C. § 3553(a), the Court should sentence the defendant to 276 months in prison.

I.  Background

As set forth in the PSR, the defendant's arrest and conviction resulted from an investigation by the Federal Bureau of Investigation's Long Island Gang Force into a series of violent crimes committed by members of La Mara Salvatrucha, also known as the MS-13 street gang (hereinafter, the "MS-13").  PSR at ¶¶ 5-10.  The defendant, who is a self-admitted member of the MS-13, and numerous other MS-13 gang members were charged in the Fourth Superseding Indictment with a series of violent crimes.  As set forth in the PSR, the defendant pled guilty to his participation in the January 18, 2009 robbery of Miguel Alguera, John Doe #1 and John Doe #2, which resulted in the murder of Mr. Alguera, the May 2009 conspiracy to murder rival SWP gang members, which resulted in the murder of Ruben Madrid and the September 14, 2008, conspiracy to commit assaults with dangerous weapons, at the Antojitos Salvadoranos Bar in Hempstead, New York, which resulted in the murder of Iber Marin.  Id. at 11-12 and 14-16.

On January 18, 2008, 15 year-old Miguel Alguera was playing handball with two friends at Hempstead High School when he was set upon by the defendant and several of his fellow MS-13 gang members, all of whom were wearing bandanas covering their faces.  Id. at ¶ 11.  Although neither Alguera nor his two friends belonged to any gangs, the handball court was considered to be the turf of gangs other than the MS-13.  PSR at ¶ 11.  The defendant and his co-conspirators approached the boys while screaming "La Mara" and flashing gang hand signs.  Id.  Several of the MS-13 gang members were armed with knives and what appeared to be a pipe and forced Alguera and his friends up against a wall where they were quizzed on their gang affiliations, which they denied.  Id.  The defendant and his co-conspirators then robbed the three victims of their money, a cell phone and an MP3 player.  Id.  Alguera was stabbed fatally once by one of the masked MS-13 members as the defendant and the rest of the gang were leaving the handball court after the property had already been forcibly taken from the victims.  PSR at ¶ 11.

On September 14, 2008, several members of the MS-13 were socializing outside of the Antojitos Salvadoranos Bar in Hempstead, New York when some members of the gang became involved in a dispute and began beating John Doe #14, who was believed to be a member of the rival 18th Street Gang.  Id. at ¶ 14.  During this assault, Iber Marin intervened and attempted to assist John Doe #14, which resulted in Marin in turn being assaulted by the defendant and the other MS-13

3

gang members, who struck Marin with their feet, fists and glass beer bottles.  Id. at ¶¶ 14-15.  Marin escaped from the defendant and his other attackers by running inside of the kitchen of the bar, where he was fatally stabbed by MS-13 gang member Jose Portillo.1  Id. ¶ 15.  Although the government can prove that the defendant participated in the initial group assault of Marin outside of the bar, there is insufficient evidence to show that he participated in the later fatal stabbing inside of the kitchen.  PSR at ¶ 15.  Following the assault of Marin, the defendant and other MS-13 members next assaulted John Doe #13, who was walking in the area, beating him with their fists and feet and causing injuries requiring hospitalization.  Id. at ¶16.

Finally, on May 17, 2009, Ruiz, who was armed with a .38 caliber revolver, was driving around Hempstead with two other MS-13 members hunting for rivals to assault when they observed four men who they recognized as belonging to rival gangs in the vicinity of Wellington Street.  Id. at ¶ 12.  The defendant and the other MS-13 members stalked the men and observed them get into a parked car and begin to smoke marijuana.  Id.  The MS-13 members then drove next to the parked vehicle and the defendant fired five shots into the parked vehicle, striking and killing Ruben Madrid and endangering the lives of the other individuals standing in the vicinity of the vehicle.  PSR at ¶ 12.

    II.   The Defendant Should Be Sentenced to 276 Months' Incarceration

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to 276 months in prison.

    A.   Legal Standard

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a).  Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but Booker allows the court to

---

1 Portillo pled guilty pled guilty to murder in the second degree in state court and received an indeterminate sentence of 18 years to life.  He was not indicted federally for his involvement in the Marin murder.

4

"tailor the sentence in light of other statutory concerns[.]" Kimbrough v. United States, 552 U.S. 85, 101 (2007) (citing Booker at 245-46 and Gall v. United States, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). Id. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant; and

    (2)    the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1) and (2).

    B.    Analysis

Here, pursuant to the recent decisions of the Supreme Court, the Court's "starting point and the initial benchmark" when determining the defendant's sentence should be the applicable Guidelines range of 276 months. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)). In light of the sentencing factors set forth by Congress, the government respectfully submits that the defendant should be sentenced to 276 months, which is his advisory Guidelines range.

As an initial matter, with respect to § 3553(a)(1), the nature of the instant offenses, the conspiracy to murder rival gang members in which Ruben Madrid was murdered, the conspiracy to commit assaults with dangerous weapons in which Iber Marin was murdered and the conspiracy to commit robberies in which Miguel Alguera was

murdered, are all extremely serious crimes. All of these violent acts were committed by the defendant and other members of the MS-13 and the acts themselves were committed by the defendant to increase his position with the gang. On January 18, 2008, the defendant and his fellow armed MS-13 members set upon a smaller, younger and unarmed trio of boys, none of whom were gang members themselves, in order to claim the territory of the Hempstead High School for their gang. 15 year old Miguel Alguera, who was at the school playing a game with his friends, lost his life because the defendant and his co-conspirators were trying to make the point that no one was safe from violence or even death from the MS-13 while in territory ostensibly controlled by the MS-13's rivals. Nine months later, Iber Marin lost his life because the defendant and his co-conspirators once again wanted to establish that anyone who was labeled as an enemy of the MS-13 would be subject to death. Six months after Marin's death, Ruben Madrid was hunted down and murdered because he had been identified by the defendant and his co-conspirators as a rival of the MS-13. All three of these incidents are remarkable for both their senselessness and extreme violence, in that not only were the victims placed in danger, but many other innocent victims in the vicinity of the crimes as well. The defendant's participation in these acts are indicative of both his callous disregard for human life and his willingness to wage war against the enemies of the MS-13, both real and perceived, on the streets of this district.

The defendant's history and characteristics also warrant a sentence of 276 months. In addition to his membership in the MS-13 street gang and his violent acts resulting in the instant conviction, the defendant has seven prior criminal convictions despite being only 19 years-old at the time of his arrest on the federal indictment. Additionally, three of those convictions are for the same type of assaultive behavior that the defendant exhibited in the instant indictment and are by themselves significant additional aggravating factors. Specifically, when he was 17 years-old, the defendant and several other known MS-13 members attempted to charge "rent" or extort employees of a deli, an altercation ensued and one of the employees were robbed. PSR at ¶ 97. The defendant was granted youthful offender status and was sentenced to an ameliorative sentence of 5 years' probation. Id. Not surprisingly, the defendant failed to take advantage of this rehabilitative sentence and his probation was subsequently revoked due, in part, to his many subsequent arrests. Namely, while still 17 years-old, the defendant was arrested and convicted of misdemeanor assault for an incident in which he and another assailant punched and kicked an overmatched

victim, causing lacerations and contusions to his face. Id. at ¶ 101. Additionally, when the defendant was 18 years-old, he was convicted of menacing when he and three co-conspirators brandished knifes and threatened a couple shopping at the mall, causing them to flee. Id. at ¶ 102. Obviously, the defendant favors brutal and cowardly violent assaults of over-matched victims by multiple assailants. The incidents for which the defendant stands convicted represent the third, fourth and fifth times that he has engaged in such attacks. The main difference between the prior incidents and those in the federal indictment is that the defendant appears to have increased the violence involved in the encounters.

In his sentencing submission, the defendant argues that his alleged cognitive impairments, medical history and personal history, in particular his difficult upbringing in the United States and El Salvador, warrants a reduction of sentence. Def. Mem. at 1-17. The government does not dispute that the defendant grew up under difficult economic conditions in both countries. However, the defendant was born in the United States, where he received an education up until the time he decided to stop attending school. PSR at ¶ 119. Thereafter, the defendant was able to find sporadic employment, which was no doubt complicated by his frequent arrests and subsequent jail terms. Id. at ¶¶ 121-23. Moreover, there is nothing unduly exceptional about the defendant's upbringing and many immigrants from El Salvador, such as Miguel Alguera face similar hardships, but do not join the MS-13 street gang and do not commit multiple violent crimes. The defendant deliberately chose to join the MS-13 and zealously embraced its violent ideology rather than follow the example of the innumerable other individuals of Salvadoran descent who live and work tirelessly in this country without violating the law. Finally, to the extent that the defendant's background merits a below Guidelines sentence, such a reduction was already contemplated by the government. As discussed *supra*, the defendant's advisory Guidelines range without the applicable statutory maximum sentences is 360 months to life. The government already considered the defendant's background in offering him the opportunity to plead guilty to charges whose maximum combined sentences are 276 months. The defendant does not merit any further reduction below the Guidelines.

Thus, the "nature and circumstances of the offense" and the "history and characteristics" of the defendant both strongly warrant a sentence of 276 months in prison, pursuant to § 3553(a)(1).

The Court must also consider the factors set forth in §

3553(a)(2)(A)-(C), which provide that a sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).  These factors also weigh in favor of a sentence toward the high-end of the defendant's Guidelines range.

With respect to factor § 3553(a)(2)(A), it is self-evident that the conspiracies to commit robbery, assaults and murder, which resulted in the death of three young men, who the defendant and his co-conspirators did not seem to have any specific problems with, are serious offenses and need to be adjudicated in a manner that will promote respect for the law and provide just punishment for the offenses.

Second, in regard to factor § 3553(a)(2)(B), affording adequate deterrence to criminal conduct, Long Island has been plagued by gang violence over the past several years; especially violence perpetrated by members of the MS-13.  In the instant indictment alone, MS-13 members were indicted on charges relating to 11 murders between January 2008 and March 2010.  A sentence within the Guidelines range would send a strong message that violent conduct such as that engaged in by the defendant and his fellow MS-13 gang members, including robbing, assaulting and attempting to murder rival gang members or anyone else who stands in the gang's way, will not be tolerated.

Finally, and perhaps most significantly, pursuant to § 3553(a)(2)(C), it is essential that the Court's sentence "protect the public from further crimes of the defendant."  As set forth above, the defendant is a self-admitted member of the MS-13, which alone makes him a greater risk of being a recidivist.  However, the defendant presents an even greater threat to the public in light of the fact that he has already been convicted of numerous crimes, three of which included violence or the threat of violence, but has not been deterred from continuing to engage in deadly assaultive conduct.

III. Conclusion

Accordingly, for all of the reasons set forth above, the government respectfully submits that the Court should sentence the defendant to 276 months' incarceration.

Respectfully submitted,

```
                              LORETTA E. LYNCH
                              United States Attorney


                     By:      _____
                              Raymond A. Tierney
                              John J. Durham
                              Assistant U.S. Attorneys
                              (631) 715-7849/7851
```

cc:  Michael K. Bachrach, Esq. (By email and ECF)
     Clerk of the Court (JFB) (By ECF)