UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                          :

UNITED STATES OF AMERICA,        :

                          :

    -against-                 :        ORDER
                          :        10-074 (S-4) (11) (JFB)

                          :

LOUIS RUIZ,                  :

             Defendant.        :

                          :
------------------------------------------------------------X

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

On March 22, 2013, defendant Louis Ruiz (the "defendant") pled guilty to Counts One and

Fifteen of the Fourth Superseding Indictment, charging him, respectively, with Racketeering, in

violation of 18 U.S.C. §§ 1962(c) and 1963(a), and Conspiracy to Commit Assaults with

Dangerous Weapons, in violation of 18 U.S.C. § 1959(a)(6). (Dkt. No. 1755 ("Gov't Opp'n") at

3); *see also* Dkt. No. 1427. Specifically, in connection with these counts, the defendant pled guilty

to participating in: (1) the January 18, 2008 robbery of Miguel Alguera, John Doe #1, and John

Doe #2, which resulted in Alguera's murder; (2) the September 14, 2008 conspiracy to commit

assaults with dangerous weapons at the Antojitos Salvadoranos Bar in Hempstead, New York,

which resulted in the death of Iber Marin; and (3) the May 2009 conspiracy to murder rival

Salvadorans With Pride gang members, which resulted in the murder of Ruben Madrid. (Plea Tr.

at 9–10, 21–22; Gov't Opp'n, Ex. 1 at 3; Gov't Opp'n at 3.) On October 11, 2013, the Court

sentenced the defendant to 276 months' imprisonment. (Dkt. No. 1427.)

On December 14, 2020 and February 8, 2021, the Court received the defendant's *pro se*

motions for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A), based on circumstances

related to the COVID-19 pandemic, and, alternatively, for a reduction in sentence, pursuant to 18

U.S.C. § 3582(c)(2), based on a purported amendment to the Sentencing Guidelines.  (Dkt. Nos.

1730 ("Def. Mot."), 1736 ("Supp. Def. Mot.").)  The government filed its opposition to the motions

on August 6, 2021.  (Gov't Opp'n at 1.)  On January 31, 2022, after being granted several

extensions of time, the defendant filed his reply.  (Dkt. No. 1764 ("Def. Reply").)

For the reasons set forth below, the defendant's motions are denied.

## I.    **Applicable Law**

As a threshold matter, a defendant may file a motion for compassionate release only once

he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to

bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request

by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  For a

*pro se* movant, this motion "must be construed liberally and interpreted to raise the strongest

arguments that [it] suggest[s]."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006) (emphasis and internal quotation marks omitted).  However, the defendant nonetheless bears

the burden of both establishing that he is eligible for compassionate release and demonstrating that

he exhausted administrative remedies in pursuing the sentence reduction.  *See United States v.*

*Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) (discussing a defendant's burden when seeking a

decrease in punishment); *United States v. Harrison*, No. 14 Cr. 167 (NRB), 2021 WL 1144820, at

*2 (S.D.N.Y. Mar. 24, 2021) ("[The] defendant . . . bears the burden of demonstrating that his

release is justified under Section 3582(c)(1)(A).").  Regarding the exhaustion requirement, the

Second Circuit recently clarified that it "is not a jurisdictional limitation on a court's power to

consider an inmate's motion for compassionate release.  Rather, Section 3582(c)(1)(A)'s

exhaustion requirement is "a claim-processing rule that may be waived or forfeited by the

government."  *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).

Under Section 3582(c)(1)(A), district courts have the discretion to grant compassionate release where there are "extraordinary and compelling reasons" to do so. 18 U.S.C. § 3582(c)(1)(A)(i). District courts in the Second Circuit may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see also id.* at 236 (holding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling").

Courts must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).[1] Even if there are extraordinary and compelling reasons warranting release, a court may deny a compassionate release motion "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." *United States v. Davies*, No. 17-CR-57 (ERK), 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (internal quotation marks omitted).

---

[1] These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentences and sentencing range provided for in the USSG]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

3

Next, in considering the defendant's alternative motion for a sentence reduction under Section 3582(c)(2), district courts may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." 18 U.S.C. § 3582(c)(2). In evaluating whether a sentence modification is warranted, district courts proceeding under Section 3582(c)(2) must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification," and, if applicable, may consider, whether the Section 3553(a) factors warrant a sentence reduction. *Dillon v. United States*, 560 U.S. 817, 827 (2010). Under Section 1B1.10, if a court determines a sentence reduction is warranted, it shall apply the amended guideline range authorized in subsection (d) as if it were applicable at the time of the defendant's original sentencing. *See* U.S. Sentencing Guidelines Manual §1B1.10(b) (U.S. Sentencing Comm'n 2018). It is only appropriate for a court to weigh the Section 3553(a) factors once eligibility for a sentence modification is established, and, further, such factors "cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Dillon*, 560 U.S. at 827.

## II.   <u>Discussion</u>

First, the parties do not dispute that the defendant exhausted his administrative remedies on his compassionate release motion. The defendant filed an initial petition for compassionate release with the Warden at United States Penitentiary ("USP") Coleman II, which the Warden denied on December 2, 2020.[2] (Supp. Def. Mot. at 5.) The defendant subsequently filed the instant motion before this Court on December 14, 2020, (Dkt. No. 1730), with a supplemental motion

---

[2] Although he asserts that the Warden's denial of his petition was racially motivated, *see, e.g.*, Supp. Def. Mot. at 2, the defendant provides no support for that allegation.

filed on February 8, 2021, (Dkt. No. 1736). Thus, the defendant satisfied the exhaustion requirement.

The defendant argues that the following extraordinary and compelling reasons warrant his release: (1) alleged ineffective assistance of counsel; (2) purported changes in the law that would impact the defendant's Sentencing Guidelines range; and (3) the defendant's alleged medical and mental health conditions. *See generally* (Def. Mot. at 1–11.) In his reply, the defendant also points to the poor health of his mother and asserts that he needs to be released to care for her. (Def. Reply at 1–2.)

First, the Court rejects defendant's claims of ineffective assistance of counsel as improperly raised. Such claims should have been brought through a 28 U.S.C. § 2255(a) motion. *See generally Gonzales v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (discussing the defendant's burden when raising claims of ineffective assistance of counsel through a Section 2255 motion); *see also United States v. Proge*, 12-cr-20052-06, 2021 WL 3857440, at \*2 (E.D. Mich. Aug. 30, 2021) ("[A] federal prisoner cannot raise claims to vacate a sentence under § 2255[,] [including on the basis of ineffective assistance of counsel,] in a motion for compassionate release."). Moreover, even if these claims were properly raised here, they are subject to a one-year statute of limitations running from, at the latest, "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1). Here, the Court imposed its judgment of conviction over eight years ago, (Dkt. No. 1427), but no post-conviction motion followed.[3]

---

[3] In any event, the defendant has failed to demonstrate that there is any merit to his ineffective assistance claims. To the extent that defendant asserts that his attorney "sold [him] out" to the government and "tricked [him] into signing" the plea agreement, (Supp. Def. Mot. at 24), the Court clarified multiple times throughout the plea hearing on March 22, 2013 that the defendant, who admitted to having reading difficulties, adequately understood the agreement to which he pleaded, (Plea Tr. at 18). In response, the defendant acknowledged that he read the agreement, discussed it with counsel, and was freely entering into it. (*Id.*) In short, the defendant has failed to demonstrate any deficient performance by his attorney in any aspect of the representation. In fact, the Court commended defense counsel at sentencing for his efforts in

Second, with respect to the defendant's claim that he is eligible for a sentence reduction pursuant to Section 3582(c)(2) because the Sentencing Guidelines have changed since the imposition of his original sentence, the Court concludes that this claim should also be denied because there has been no modification of the applicable Guidelines provisions used to calculate his advisory range at the time of his original sentencing. The defendant argues that the First Step Act, which amended various provisions of the Sentencing Guidelines, entitles him to a reduced sentence under Section 3582(c)(2). *See* Def. Mot. at 1; *see also* First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194 (2018). However, he does not identify any specific amendment to the Sentencing Guidelines that would result in a reduced sentence, and the Court concludes that no such amendment exists. At his original sentencing, the defendant's total offense level was 39 with a Criminal History Category IV, which yields an advisory Guidelines sentence of 360-months to life imprisonment. (Sent'g Tr. at 7.) However, given the statutorily authorized sentence for the negotiated plea, the effective Guidelines sentence was 276 months. (Sent'g Tr. at 8, 15.) If the defendant were to be sentenced today, his effective Guidelines range would be identical to that used at his original sentencing. (Gov't Opp'n at 10.) Accordingly, the defendant's motion for a sentence reduction under Section 3582(c)(2) is denied.[4]

The Court now turns to the defendant's argument that his physical and mental health, as well as his mother's poor health, constitute extraordinary and compelling reasons for

---

zealously highlighting any applicable "mitigating factors, including the defendant's age, personal history, his cognitive situation, and medical history." (Sent'g Tr. at 19.)

[4] Moreover, the Court rejects the defendant's Hobbs Act-related arguments as well. First, he is incorrect in arguing that Hobbs Act robberies are not crimes of violence in the Second Circuit. *See United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) ("The predicate offense for each of these crimes is substantive Hobbs Act robbery, which can be identified as a crime of violence under § 924(c)(3)(A)[.]" (emphasis omitted)). Moreover, the defendant's Hobbs Act arguments are irrelevant because he was convicted pursuant to RICO and VICAR, and the racketeering charges were predicated on N.Y. Penal Law §§ 160.05 and 20.00, not the Hobbs Act.

compassionate release. As the Second Circuit has made clear, "when a district court denies a defendant's motion [for compassionate release] under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021). That is exactly what this Court has concluded here. In other words, the Court assumes, *arguendo*, that the defendant has demonstrated extraordinary and compelling reasons for compassionate release based upon the various grounds articulated and concludes, in its discretion, that the Section 3553(a) factors weigh overwhelmingly against the defendant's release.[5]

In particular, the defendant pled guilty to racketeering in connection with the robbery of Michael Alguera, John Doe #1, and John Doe #2 (which resulted in the murder of Alguera), conspiracy to commit assaults with dangerous weapons (which resulted in the murder of Iber Marin), and conspiracy to murder rival gang members (which resulted in the murder of Ruben Madrid). (Plea Tr. at 9–10, 21–22; Gov't Opp'n, Ex. 1 at 3; Gov't Opp'n at 3.) As the Court noted at sentencing, 276 months' imprisonment was necessary because, among other things, "the need to deter this defendant and anyone else is to[o] great to warrant a lesser sentence."[6] (Sent'g Tr. at 20.) The Court's view regarding the defendant's sentence has not changed. First, the Court notes that, notwithstanding the defendant's efforts to further his education while incarcerated, *see* Supp.

---

[5] Although the defendant complains that he has been unable to obtain medical records from the Bureau of Prisons to document his medical and mental conditions, and that the Bureau also prevented his mother from sending her medical records to him so that he could corroborate her poor health, (Def. Reply at 1), the Court notes that such records are unnecessary for the Court's decision here because the Court has assumed the existence of such health conditions for the defendant and his mother (as described by the defendant) for purposes of this motion and finds that he is still not entitled to release.

[6] The Court also noted at sentencing that the defendant's acts were especially dangerous "because they [were] in conjunction with the activities of the violent street gang, the MS-13," which "terrorize[s] communities." (Sent'g Tr. at 18.)

Def. Mot. at 7, the defendant has been sanctioned for numerous disciplinary violations since his sentence was imposed, *see* Gov't Opp'n, Ex. 5, Gov't Opp'n at 11. In any event, even in the absence of the disciplinary violations, the Court concludes that release at this juncture—where the defendant has served well under half of his original sentence—would not adequately reflect the severity of his violent criminal conduct or the harm it caused to the victims. Furthermore, as noted above, release would neither sufficiently protect society, nor adequately deter the defendant and others engaged in this type of violent criminal conduct. Finally, the Court is also mindful that granting the motion for compassionate release could result in unwarranted sentencing disparities among similarly situated defendants. Thus, the Court concludes, in its discretion, that the Section 3553(a) factors overwhelmingly warrant denial of the defendant's motion for compassionate release even assuming, *arguendo*, that he had demonstrated extraordinary and compelling reasons that could, under other circumstances, warrant release.[7]

Accordingly, for the reasons stated above, the Court, in its discretion, denies the defendant's motions. The Clerk of the Court shall mail a copy of this Order to the defendant.

SO ORDERED.
/s/Joseph F. Bianco

JOSEPH F. BIANCO
UNITED STATES CIRCUIT JUDGE
(sitting by designation)

Dated: February 16, 2022
Central Islip, New York

---

[7] For the same reasons, even if the defendant were eligible for a sentence reduction under Section 3582(c)(2) because of a change in the Sentencing Guidelines, the Court would deny any such reduction in its discretion based upon the balancing of the Section 3553(a) factors.